1  COHEN DOWD QUIGLEY
   The Camelback Esplanade One
2  2425 East Camelback Road, Suite 1100
   Phoenix, Arizona  85016
3  Telephone 602•252•8400

4  Ronald Jay Cohen (003041)
5  Email: rcohen@CDQLaw.com
   Daniel P. Quigley (009809)
6  Email:  dquigley@CDQLaw.com
   Betsy J. Lamm (025587)
7  Email:  blamm@CDQLaw.com
   Lauren M. LaPrade (029860)
8  Email:  llaprade@CDQLaw.com
9   Attorneys for Defendants Kirk and Janae Adams

10

11              **UNITED STATES DISTRICT COURT**

12                  **DISTRICT OF ARIZONA**

13
   Donald M. Shooter, an individual,          Case No:  CV-19-1671-PHX-DWL
14
                         Plaintiff,           **DEFENDANTS KIRK AND JANAE**
15                                            **ADAMS' MOTION TO DISMISS**

16  vs.                                       (Assigned to the Honorable Dominic W.
                                              Lanza)
17  State of Arizona; Kirk and Janae Adams,
   husband and wife; Javan "J.D." and Holly
18  Mesnard, husband and wife,                **(Oral Argument Requested)**

19                        Defendants.

20

21

22

23

24  . . .

25  . . .

26  . . .

**MOTION**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendants Kirk and Janae Adams respectfully request that the Court dismiss all claims asserted against them by Plaintiff Donald Shooter and dispose of the Complaint (Doc. 1-3, pp. 6-99) with prejudice. The Complaint is fatally flawed for multiple, independently dispositive reasons. The Complaint's deficiencies, which cannot be cured by amendment, are detailed in the following Memorandum.

**MEMORANDUM**

**I.      INTRODUCTION.**

Plaintiff Donald Shooter, a former Member of the Arizona House of Representatives (the "House"), filed a Complaint in the Arizona Superior Court for Maricopa County against Kirk Adams, the former Chief of Staff for Governor Doug Ducey, Mr. Adams' wife, Janae Adams, Javan Mesnard, the former Speaker of the House, Mr. Mesnard's wife, Holly Mesnard, and the State of Arizona, based on Plaintiff's February 1, 2018 expulsion from the House for conduct the House determined to be dishonorable and unbecoming of one of its members. [1]   The Adams and the Mesnards, with the consent of the State of Arizona, removed the action to this Court on March 11, 2019.  The Complaint purports to assert the following causes of action:  (1) violation of 42 U.S.C. § 1983; (2) defamation; (3) false light; (4) wrongful termination; (5) conspiracy; and (6) aiding and abetting.   Although the Complaint spans more than 40 pages containing 193 paragraphs, it is not readily apparent which claims (or subset of claims) Plaintiff specifically asserts against the Adams.  Moreover, within those 193 paragraphs, Plaintiff fails to allege – as he cannot in good faith allege – facts sufficient to state a claim for relief.  The claims are barred as a matter of law and the Adams request dismissal on, among other bases, the following grounds:

- The § 1983 and wrongful termination claims raise nonjusticiable political questions;
- Plaintiff's state law claims are barred by his failure to serve a compliant notice of claim, as required to pursue claims against public officials;

---

[1]      Mrs. Adams is listed as a Defendant for purposes of the marital community.

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

1   −   Absolute legislative immunity and qualified immunity bar Plaintiff's § 1983 claim;

2   −   Plaintiff's expulsion from the House does not implicate a property interest, liberty
3       interest, or due process violation necessary to pursue a § 1983 claim;

4   −   The Complaint does not contain factual allegations sufficient to state any
5       plausible claims for relief against the Adams;

6   −   As a public official, Plaintiff cannot assert a claim for false light invasion of
7       privacy based on statements concerning his performance of public duties;

8   −   Plaintiff's expulsion from the House cannot constitute wrongful termination,
9       particularly as to the Adams; and

10  −   As Plaintiff cannot state a claim for violation of § 1983, defamation or false light,
11      Plaintiff cannot state a claim for conspiracy or aiding and abetting.

12  For each of these reasons, the Complaint should be dismissed in its entirety − or, at a

13  minimum against the Adams − with prejudice.

14  **II.   SALIENT FACTUAL BACKGROUND.**[2]

15      **A.   The House Of Representatives Votes To Expel Plaintiff For
16           Dishonorable Conduct Unbecoming Of A Member.**

17      Plaintiff is a former Member of the House of Representatives for District 13.

18  [Complaint ¶ 1; *see also* HR 2003 (attached as **Ex. 1**).]  In the fall of 2017, sexual harassment

19  allegations surfaced against Plaintiff.   [Complaint ¶¶ 54-55; *see also, e.g., id.* ¶¶ 91, 95.]

20  Plaintiff requested that the Speaker of the House, Mr. Mesnard, conduct an investigation

21  into the allegations against him as well as into his retaliatory allegations of sexual harassment

22  by one of his accusers, Representative Michelle Ugenti-Rita.   [Complaint ¶¶ 62, 66-67; HR

23  _____

24  [2]     The following facts are taken from Plaintiff's Complaint and public records
    referenced in and central to the Complaint.  The Court may consider these materials in
25  evaluating a motion to dismiss, whether or not attached by Plaintiff.  *E.g., United States v.
    Sierra Pac. Indus., Inc.,* 862 F.3d 1157, 1171 (9th Cir. 2017) ("In the analogous context of a
26  motion to dismiss, a court can consider matters of public record even when assuming the
    truth of the allegations[.]"); *Phoenix Newspapers, Inc. v. Ellis,* 215 Ariz. 268, 272, ¶ 21, 159 P.3d
    578, 582 (App. 2007) (a notice of claim is a public record); *Lake v. City of Phoenix,* 222 Ariz.
27  547, 549, ¶ 8, 218 P.3d 1004, 1006 (2009) (recognizing that "documents with 'substantial
    nexus' to government activities qualify as public records"); *accord Marder v. Lopez,* 450 F.3d
28  445, 448 (9th Cir. 2006).

2

2003 (**Ex. 1**).]   Mr. Mesnard appointed a bipartisan team to investigate the allegations on behalf of the House with the assistance of outside counsel, Sherman & Howard.  [Complaint ¶¶ 68, 72-73, 120; HR 2003 (**Ex. 1**).]   During the factual investigation, Sherman & Howard interviewed more than 40 witnesses and victims over eleven weeks and, ultimately, reached conclusions concerning the allegations against Plaintiff and Ms. Ugenti-Rita.  [HR 2003 (**Ex. 1**); Sherman & Howard Report ("Report"), dated January 29, 2018 (attached as **Ex. 2**).]

On January 30, 2018, Sherman & Howard presented its findings to the House.  [HR 2003 (**Ex. 1**).]  Sherman & Howard found "credible evidence that Representative Shooter has violated the Arizona House of Representatives policy on workplace harassment" and "created a hostile working environment for his colleagues and those with business before the legislature" during the time he served as a member of the Arizona Senate through 2017.  [*Id.*; Report, pp. 6, 75 (**Ex. 2**).]   After a lengthy discussion on the House floor, with many members explaining their vote including Plaintiff,[3] the House determined that Plaintiff's "pattern of conduct was dishonorable and unbecoming of a member of the House of Representatives[,]" "undermined the public's confidence" in the House, and "violated the order and decorum necessary to complete the people's work in the State of Arizona."  [HR 2003 (**Ex. 1**).]   Exercising "the power granted to it by Article IV, part 2, section 11, Constitution," the House voted 56-3 to expel Plaintiff.  [*Id.*; Complaint ¶¶ 148-49, 163, 169.]

**B.**   **Plaintiff's Notice Of Claim Against Mr. Adams.**

On April 16, 2018, Plaintiff, through counsel, served a letter entitled "Notice of Claim by Donald Shooter pursuant to A.R.S. § 12-821.01" on Mr. Adams, among others.  [*See* Letter from K. Marton (attached without exhibits at **Ex. 3**).]   Plaintiff's "Notice of Claim" contested Plaintiff's February 1, 2018 expulsion from the House and alleged that the expulsion somehow gave rise to legal claims.  [*See id.*]   Yet, despite comprising 17 pages and attaching 8 separate exhibits, the letter failed to articulate any cogent basis for claims against

---

[3]     The entire House proceeding, including Plaintiff's public comments addressing the allegations against him are available for review on the House website.  *See* February 1, 2018 House Floor Session, Third Reading ("House Floor Session"), *available at* http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=20318, at 4:32-6:17 (last accessed March 13, 2019).

COHEN DOWD QUIGLEY

1  Mr. Adams.  The letter did not present facts sufficient to allow Mr. Adams to understand

2  how a House vote to expel Mr. Shooter could possibly form the basis for the purported,

3  unspecified claims against him.  [*See id.*]  Plaintiff did not subsequently amend his "Notice of

4  Claim" or serve any other documentation upon Mr. Adams.

5      **C.    Plaintiff Files A Baseless Lawsuit Against The Defendants.**

6      While far from a model of clarity, Plaintiff's Complaint appears to allege that he was

7  somehow deprived of due process of law in connection with the near-unanimous House

8  vote to expel him.  [Complaint ¶ 163.]  The Complaint purports to assert four claims.  Yet,

9  similar to the "Notice of Claim," the Complaint does not clearly identify the specific claims

10 asserted against Mr. Adams or how the limited allegations that even refer to Mr. Adams give

11 rise to any cognizable claim against him.  In support of his claims, Plaintiff alleges the

12 following relating to Mr. Adams:  (1) Mr. Adams was the Chief of Staff to the Governor of

13 Arizona; (2) Plaintiff allegedly raised concerns relating to uncompetitive procurement

14 practices with Mr. Adams; (3) Plaintiff later experienced "incidents of harassment" by third

15 parties, including being followed by a private investigator; (4) on November 2, 2017, Plaintiff

16 allegedly threatened to subpoena information regarding the State's procurement practices; (5)

17 Mr. Adams allegedly directed a reporter to interview then-Representative Michelle Ugenti-

18 Rita and her fiancé regarding sexual harassment allegations against Plaintiff in an effort to

19 dissuade him from investigating the State's procurement practices; and (6) Mr. Adams had

20 an "agreement" with Mr. Mesnard and "another member of the Governor's Office"

21 pursuant to which Mr. Mesnard and the House allegedly took all actions alleged the

22 Complaint.  [Complaint ¶¶ 28-29, 32-33, 41, 54-59.]  These bare allegations do not support

23 any cognizable claim for relief against Mr. Adams.  As detailed below, the Complaint should

24 be dismissed with prejudice in its entirety, at least as to the Adams.

25 **III.    PLAINTIFF'S FATALLY DEFICIENT COMPLAINT SHOULD BE DISMISSED.**

26      **A.    Applicable Legal Standard.**

27      Rule 12(b) is designed to eliminate legally deficient claims whose continued existence

28 would serve only to needlessly consume judicial resources and impose unnecessary burden,

COHEN DOWD QUIGLEY

harm, and expense on defendants.  *See, e.g., Allen v. Marshall*, 37 F.3d 1504 (9th Cir. 1994) ("Rule 12(b)(6) dismissal protects litigants from defending when no legal claim has been made."); *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) ("The purpose of [Rule 12(b)(6)] is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity.").  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[4]  The Complaint falls woefully short of this standard and should be dismissed.  *See Bell v. Wells Fargo Bank, NA*, 663 F. App'x 549, 551-52 (9th Cir. 2016) (affirming dismissal of complaint containing "bare-bones assertions" without sufficient factual support).

**B.    The Complaint Raises Non-Justiciable Political Questions.**

Cases are beyond judicial power when the issues involved are specifically assigned to another branch of government.  *Marbury v. Madison*, 5 U.S. 137, 165 (1803).  A case that raises a political question is nonjusticiable.  *Baker v. Carr*, 369 U.S. 186, 209 (1962).  A question is political when its "adjudication would inject the courts into a controversy which is best suited for resolution by the political branches." *Wu Tien Li-Shou v. United States*, 777 F.3d 175, 180 (4th Cir. 2015).  The political question doctrine is an important "tool for [the] maintenance of governmental order," and has its roots in the separation of powers.  *Baker*, 369 U.S. at 215.  Because the political question doctrine is jurisdictional in nature, courts look beyond the facts of a complaint when deciding if a case presents a political question. *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).  A case raises a non-justiciable

COHEN DOWD QUIGLEY

---

[4]    The Federal Rules of Civil Procedure and pleading standard apply following removal. *See, e.g.*, Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018) (explaining that the Federal pleading standard controls following removal of an action to federal court).

political question if one of the following exists:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217; *see also Vieth v. Jubelirer*, 541 U.S. 267 (2004).  If any of the factors are "inextricable from the case at bar" the case involves a nonjusticiable political question and must be dismissed.  *Baker*, 369 U.S. at 217; *see also Rangel v. Boehner*, 20 F.Supp.3d 148, 167 (D.D.C. 2013) ("The first two factors – a textual commitment to another branch of government and a lack of judicially manageable standards – are considered to be 'the most important', but in order for a case to be nonjusticiable, a court 'need only conclude that one factor is present, not all.'") (internal citations omitted); *Mecham v. Ariz. House of Representatives*, 162 Ariz. 267, 782 P.2d 1160 (1989) (declining to review impeachment proceedings); *Kromko v. Ariz. Bd. of Regents*, 216 Ariz. 190, 193, 165 P.3d 168, 171 (2007) (dismissing claim that raised a non-justiciable political question).

The determination of the rules of the House of Representatives, including regarding procedure and the expulsion of a member of the House, are issues the Arizona Constitution entrusted to the Legislature.  *See* ARIZ. CONST. Art. IV, Pt. 2, §§ 11 ("Each house may punish its members for disorderly behavior, and may, with the concurrence of two-thirds of its members, expel any member."), 8 ("Each house, when assembled, shall . . . determine its own rules of procedure."); *see also U.S. v. Ballin*, 144 U.S. 1, 5 (1982) ("The constitution empowers each house to determine its rules of proceedings.").  The House, in turn, established rules governing its members, including regarding expulsion and sexual harassment.  [*See* Complaint, Ex. 6 (House Rules 1 ("The House may punish its members for disorderly behavior and may, with the concurrence of two-thirds of the members elected to the House, expel any member . . . . A violation of any of the House Rules shall be deemed

6

disorderly behavior."), 38 ("The House shall have a written harassment prevention policy applicable to member behavior.")).]  It is also beyond legitimate debate that State legislative bodies retain the power and discretion to remove or expel a member.  *E.g.*, *Smith v. Ariz. Citizens Clean Elections Comm'n*, 212 Ariz. 407, 411-12, 132 P.3d 1187, 1191-92 (2006) (recognizing that Arizona Constitution does not limit the legislature's power to remove elected officer); *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 155-56 (2d Cir. 2010) (citing cases recognizing the unwavering power of the legislature to expel a member).

Moreover, although the Complaint appears to allege due process and equal protection violations, the core issue involves the ability of the House to investigate and, ultimately, expel one of its members.  [Complaint ¶¶ 184, 193.]  Plaintiff cannot avoid this reality by injecting conclusory allegations of a constitutional violation in his Complaint.  *See, e.g.*, *Rangel*, 20 F.Supp.3d at 172 (noting that "if a threshold showing of a constitutional violation is required, plaintiffs may not simply plead around the political question doctrine by asserting plainly meritless constitutional violations" and finding that the discipline of a member of the House of Representatives presented a nonjusticiable political question as the plaintiff failed to sufficiently allege that he was deprived of a cognizable liberty or property interest).

Because the Complaint raises nonjusticiable political questions, particularly as to Plaintiff's § 1983 and wrongful termination claims, the Court should dismiss those claims.

### C.   Plaintiff's State Law Claims Should Be Dismissed For Failure To Comply With A.R.S. § 12-821.01.

A.R.S. § 12-821.01 requires a claimant to identify "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed" and to identify "a specific amount for which the claim can be settled[.]"  A.R.S. § 12-821.01; *see also, e.g., Haab v. County of Maricopa*, 219 Ariz. 9, 12, 191 P.3d 1025, 1028 (App. 2008).  "[A] valid claim must contain enough information to allow the State to intelligently ascertain these purposes so that it can conscientiously allow or disallow that claim and if disallowed thereby trigger the right of the citizen to seek redress in the courts." *State v. Brooks*, 23 Ariz. App. 463, 466, 534 P.2d 271, 274 (1975), *disagreed with on other grounds by Pritchard v. State*, 23 Ariz.

COHEN DOWD QUIGLEY

App. 463, 534 P.2d 271 (1975).  If the facts upon which liability is claimed do not appear in a notice filed within 180 days after the claim accrues, the notice is invalid and the claim is barred.  *See Haab*, 219 Ariz. at 12, 191 P.3d at 1028; *Maricopa Cty. Cmty. Coll. Dist. v. Talamante*, 2015 WL 1275441, at *4 (Ariz. App. Mar. 19, 2015) (granting motion for partial summary judgment on defamation claim that was not included in a prior notice of claim).

Plaintiff failed to file a "Notice of Claim" that complies with the letter and spirit of A.R.S. § 12-821.01.  Plaintiff's "Notice of Claim" failed to identify any actions by Mr. Adams for which Plaintiff contends Mr. Adams faces liability.  It also failed to provide any cogent statement concerning the purported claims Plaintiff contended he possessed with respect to Mr. Adams.  Simply stated, the "Notice of Claim" did not contain "facts sufficient to permit [Mr. Adams] to understand the basis upon which liability is claimed." *See* A.R.S. § 12-821.01.  Plaintiff did not satisfy the strict requirements of Arizona's Notice of Claim statute and all state law claims asserted in the Complaint should be dismissed.

**D.**     **Plaintiff Fails To State A Claim Under 42 U.S.C. § 1983.**

Section 1983 provides:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured …."  42 U.S.C. § 1983.  To state a claim for relief under § 1983, a plaintiff must allege facts demonstrating:  (1) the violation of a right secured by the Constitution or laws of the United States (2) committed by a person acting under the color of state law.  *See Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).  A plaintiff must also plead sufficient facts to plausibly state "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Specifically, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 362-63 (2d Cir. 1987) (affirming dismissal of § 1983 claim that alleged defendant "threatened witnesses,

8

1  unlawfully seized property, submitted false statements to courts, told persons that he had
2  engaged in fraud and sham, and illegally conspired with the Internal Revenue Service").

3          As discussed below, Plaintiff's conclusory allegations that Defendants violated his
4  due process and equal protection rights guaranteed by the United States Constitution are not
5  sufficient to state a § 1983 claim against Mr. Adams or any of the Defendants.[5]

6                  1.    Absolute And Qualified Immunity Bars Plaintiff's § 1983 Claim.

7          The United States Supreme Court has recognized that legislators are entitled to
8  absolute immunity from liability under § 1983 for their legislative activities.  *See Bogan v. Scott-*
9  *Harris*, 523 U.S. 44, 49 (1998) (*citing, inter alia, Tenney v. Brandhove*, 341 U.S. 367 (1951)).
10 Absolute legislative immunity attaches to all actions "in the sphere of legitimate legislative
11 activity."  *Tenney*, 341 U.S. at 376.  To the extent the Complaint asserts violations of § 1983
12 based on any actions taken by the House, including Plaintiff's suspension as Chairman of the
13 House Appropriations Committee, the Sherman & Howard investigation, or Plaintiff's
14 expulsion, those actions are legitimate legislative activities entitled to absolute immunity.

15         Plaintiff's § 1983 claim is similarly barred by qualified immunity, which protects
16 public officials, such as Mr. Adams, from suit unless the alleged facts demonstrate that the
17 conduct at issue violated a clearly established, particularized constitutional right.  *See, e.g.,*
18 *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F. 3d 945, 965 (9th Cir. 2010) ("[Qualified
19 immunity] is an immunity from suit rather than a mere defense to liability.");  *accord White v.*
20 *Pauly*, 137 S.Ct. 548, 552 (2017).  An official's "conduct violates clearly established law when,
21 at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that
22 every 'reasonable official would have understood that what he is doing violates that right.'"
23 *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).  "[E]xisting precedent must
24 have placed the statutory or constitutional question beyond debate."  *Id.*  As Plaintiff's §
25 1983 claim does not involve a clearly established constitutional right, it must be dismissed.

26 [5]       While unclear, we presume Plaintiff alleges § 1983 violations against Messrs. Adams
27 and Mesnard in their *individual* capacities, as sovereign immunity bars any claim against the
   State of Arizona or Messrs. Mesnard and Adams in their official capacities.  *See Arizonans for*
28 *Official English v. Ariz.*, 520 U.S. 43, 69 (1997) (states not "persons" for purposes of § 1983);
   *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (state officials sued in official capacity are not "persons").

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

2. <u>Defendants' Alleged Actions Did Not Implicate A Constitutionally Protected Property Or Liberty Interest</u>.

To prevail on a due process claim, Mr. Shooter must first "establish the existence of [ ] a liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008) (quotation and citation omitted)).  Protected interests in property "are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law [ ] that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Liberty interests are "those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."  *Paul v. Davis*, 424 U.S. 693, 722-23 (1976).  Liberty interests include the "enjoyment of one's good name and reputation."  *Id.*

As an elected official, Plaintiff has no property interest in his (former) position as a member of the House. *Compare* Complaint ¶ 163 ("Although the expulsion of Representative Shooter is not a judicial proceeding, the House vote to expel him was to deprive him of his seat in the House of Representatives, which was a property right to which he was deprived without due process of law."), *with Clark v. Campbell*, 219 Ariz. 66, 73-74, 193 P.3d 320, 327-28 (App. 2008) (holding that elected official does not have a property interest in his right to hold office); *Gamrat v. Allard*, 320 F. Supp. 3d 927, 937 (W.D. Mich. 2018) ("[P]ublic office does not constitute a property interest."); *Franzwa v. City of Hackensack*, 567 F. Supp. 2d 1097, 1105 (D. Minn. 2008) (elected official did not have a property interest in position).

Further, Plaintiff's Complaint does not establish a protected liberty interest.  *See Davis*, 424 U.S. at 699-700 (requiring more than reputational harm to establish a cognizable liberty interest); *see also Rangel*, 20 F.Supp.3d at 174 (finding a failure to allege a violation of a liberty interest when defendants did not cause the violations complained of).[6]  Plaintiff's reliance on *Montoya v. Law Enforcement Merit System Counsel*, 148 Ariz. 108, 713 P.2d 309 (1985) to support his allegation of a deprivation of a liberty interest [Complaint ¶ 184] fails for two reasons.  First, unlike the plaintiff in *Montoya*, Plaintiff was not fired by a government agency.

---

[6]   *Rangel* recognized that the legislature acts as an independent body; individual members are not responsible for the actions of the House as an institution.  *See id.* at 161.

10

1    Rather, Plaintiff, an elected official, was expelled as a member of the House by a 56-3 vote.

2    [HR 2003 (**Ex. 1**).]  Second, as discussed below, Plaintiff has not stated a cognizable claim

3    for defamation against Mr. Adams or any of the other Defendants.  *See* Part III.E, *infra*.

4                    3.    Plaintiff's Due Process Rights Were Not Violated.

5              Even if the Court determines that a protected property or liberty interest exists,

6    Plaintiff cannot state a plausible § 1983 claim because he cannot demonstrate a due process

7    right, let alone a violation, in connection with his expulsion.  *See, e.g.*, *U.S. v. Brewster*, 408 U.S.

8    501, 519 (1972) (recognizing right of the legislature to expel a member, with "no established

9    right of review" from the decision).  Even assuming that a legislator is entitled to due

10   process in connection with his expulsion, the Constitution requires, at most, only a sufficient

11   opportunity to clear one's name.  *See Monserrate v. N.Y. Senate*, 599 F.3d 148, 159-160 (2d Cir.

12   2010) (finding no due process violation where resolution provided notice that Select

13   Committee was established to investigate the facts and circumstances of domestic violence

14   charges against senator, despite allegations that senator "was not 'given copies of the

15   materials considered by the Select Committee,'" "was not able to cross-examine the two

16   witnesses" that were interviewed, and "meetings of the Select Committee were held in

17   executive session, closed to the public").  Plaintiff had sufficient opportunities to "clear his

18   name."  Sherman & Howard interviewed Plaintiff and provided him an opportunity to

19   respond to each allegation against him.  [*See* Report, pp. 11-12, 15-17, 19-22, 25-27, 29-30,

20   32, 38-39, 46, 48, 50, 54-55, 61, 64, 67-70 (**Ex. 2**).]  Sherman & Howard presented its

21   investigative findings to the House on January 30, 2018.  [HR 2003 (**Ex. 1**).]  Plaintiff had an

22   opportunity to speak to the House during the vote to expel him on February 1, 2018.  And,

23   in fact, at that time, Plaintiff instructed his colleagues to "do whatever [they] need to do."

24   [*See* House Floor Session at 05:51-53, *supra*, note 2.]  No due process violation occurred.

25                    4.    Plaintiff Has Failed To Establish An Equal Protection Violation.

26             "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

27   Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with

28   an intent or purpose to discriminate against the plaintiff based upon membership in a

COHEN DOWD QUIGLEY

11

1    protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  To the extent
2    Plaintiff alleges "disparate treatment" [*see, e.g.*, Complaint ¶¶ 76-77 (regarding his suspension
3    as chair of the House Appropriations Committee)], the allegations involve legislative
4    activities that are protected by absolute legislative immunity.  *See Bogan*, 523 at 44, 54.

5               5.    Plaintiff Has Not Alleged Any Action By Mr. Adams That Violates
6                     Due Process Or Equal Protection.

7               In addition to lacking any property or liberty interest or stating a plausible due
8    process or equal protection violation, Plaintiff does not allege any facts supporting a § 1983
9    claim against Mr. Adams.  A person deprives another of a constitutional right, within the
10   meaning of § 1983, "if he does an affirmative act, participates in another's affirmative act, or
11   omits to perform an act which he is legally required to do that causes the deprivation of
12   which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978); *see also Jones*
13   *v. Town of Quartzsite*, 2015 WL 12551172, *4 (D. Ariz. Mar. 30, 2015), *aff'd*, 677 Fed. App'x.
14   317 (9th Cir. 2017).  Conclusory allegations are insufficient; Plaintiff must set forth specific
15   facts to establish the defendant's role in the alleged constitutional deprivation.  *Woodrum v.*
16   *Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (affirming dismissal of conspiracy
17   claim to violate § 1983 that included conclusory allegations unsupported by facts).

18              As discussed above, the Complaint includes sweeping conclusory allegations of due
19   process and equal protection violations.  [*See* Complaint ¶¶ 179-185.]  However, the pleading
20   contains only naked conclusions and lacks any factual allegations sufficient to sustain a claim
21   against Mr. Adams.  Indeed, and specifically as it relates to Mr. Adams, Plaintiff alleges only
22   that "[a]ll activities of [Mr.] Mesnard, described below, were a result of his agreement with
23   [Mr.] Adams and another member of the Governor's Office."  [*Id.* ¶ 59.]  These bare
24   allegations are purely conclusory and fail to clearly set forth any facts demonstrating any role
25   Mr. Adams played in allegedly causing a violation of Plaintiff's due process or equal
26   protection rights.  Mr. Adams, then-Chief of Staff to Governor Ducey of the Executive
27   Branch – an entirely separate branch of government – is not a member of the House and
28   had no ability or authority to suspend Plaintiff from his position as House Appropriations

COHEN DOWD QUIGLEY

12

COHEN DOWD QUIGLEY

1   Committee Chairman during the Sherman & Howard investigation or expel Plaintiff from
2   the House.   Accordingly, even setting aside Plaintiff's lack of any due process or equal
3   protection violation, Plaintiff still cannot state a plausible § 1983 claim against Mr. Adams
4   absent cognizable facts that support Plaintiff's theory of Mr. Adams' alleged involvement.
5   For each of the reasons set forth above, Plaintiff's § 1983 claim must be dismissed.

6        **E.   Plaintiff Fails To State A Claim For Defamation.**

7        To state a *prima facie* claim for defamation under Arizona law, Plaintiff must allege
8   facts sufficient to show:  (1) a false and defamatory statement, (2) of or concerning Plaintiff,
9   (3) an unprivileged publication of the statement to a third party, (4) fault on the part of the
10  publisher, and (5) resulting injury.  *See, e.g., Dube v. Likins*, 216 Ariz. 406, 417, 167 P.3d 93,
11  104 (App. 2007); RESTATEMENT (SECOND) OF TORTS § 558.   Asserting a defamation claim
12  against a public official, Plaintiff must further prove that the defendant(s) acted with "actual
13  malice," as determined under an objective standard.  *See Chamberlain v. Mathis*, 151 Ariz. 551,
14  559, 729 P.2d 905, 913 (1986).   Plaintiff's Complaint fails to plead facts sufficient to
15  demonstrate any of these required elements.

16       Plaintiff alleges that "[t]he allegations and opinions against Shooter [ ] were evaluated
17  applying a bogus policy, applied retroactively, and without the opportunity to respond to the
18  investigators' report are defamatory and were publically disseminated" in the Sherman &
19  Howard Report and repeated in the media.   [Complaint ¶ 186.]   Plaintiff then alleges:
20  "Defendants made defamatory statements to the press outside of legislative proceedings."
21  [*Id.* ¶ 187.]   Plaintiff fails to identify, however, a single alleged defamatory statement
22  attributable to Mr. Adams (or any Defendant), when such alleged statement was made, and
23  how or to whom it was published.  He further fails to identify any fact which, if true, could
24  plausibly demonstrate objective actual malice.  Plaintiff's bare, conclusory allegations require
25  dismissal of his defamation claim.  *See Anzures v. La Canasta Mexican Food Prods., Inc.*, 2015
26  WL 4504156, * 4 (Ariz. App. July 23, 2015) (dismissing defamation claim, as plaintiff did not
27  identify defamatory statements or sufficiently plead publication, falsity or resulting harm).
28       Moreover, to the extent Plaintiff's defamation claim is based upon statements

13

contained in the Sherman & Howard Report, legislative immunity serves as an absolute bar. As set forth above, actions of the House in investigating allegations against its members, sponsoring a resolution to address the allegations, and ultimately expelling Plaintiff are bona fide, privileged legislative activities. *See, e.g.*, ARIZ. CONST. Art. IV, Pt. 2, § 7; *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 137, ¶ 18, 75 P.3d 1088, 1095 (Ariz. App. 2003) (recognizing that legislative immunity attaches to matters that are "'an integral part of the deliberative and communicative processes' relating to proposed legislation or other matters placed within the jurisdiction of the legislature"); *Sanchez v. Coxon*, 175 Ariz. 93, 97, 854 P.2d 126, 130 (1993) (adopting RESTATEMENT (SECOND) OF TORTS § 590); RESTATEMENT (SECOND) OF TORTS § 590 (State or local legislative bodies are "absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions"); *accord* Restatement (Second) of Torts § 590A ("A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding."). As an agent of the House, conducting an investigation at the request of the House, and serving a function akin to the House Ethics Committee, Sherman & Howard shares in the legislative immunity afforded to the members of the House. *Fields*, 206 Ariz. at 140, 75 P.3d at 1098 (extending legislative immunity to shield acts of agents "that would be privileged legislative conduct if personally performed by the legislator"). Accordingly, any alleged defamation claim based on statements contained in the Sherman & Howard Report, conducted at the behest of and to aid the House, are barred as a matter of law and the claim must be dismissed.

### F.    <u>Plaintiff Fails To State A Claim For False Light.</u>

To state a claim for false light invasion of privacy, Plaintiff must allege facts sufficient to plausibly show that "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 580, ¶ 29,

1   343 P.2d 438, 450 (App. 2015).  The tort of false light, which is intended to protect "mental

2   and emotional interests," does not extend to claims based upon a publication relating to a

3   public official's performance of his duties:

> 4   We have specifically held that the right of privacy does not exist 'where the
> 5   plaintiff has become a public character….'  In addition, privacy rights are
>     absent or limited in connection with the life of a person in whom the public
> 6   has a rightful interest, [or] where the information would be of public
>     benefit…. Consequently, we adopt the following legal standard:  a plaintiff
> 7   cannot sue for false light invasion of privacy if he or she is a public official *and*
> 8   the publication relates to performance of his or her public life or duties.

9   *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 343, 783 P.2d 781, 787, 789 (1989)

10  (internal citations omitted) (alterations in original) (affirming dismissal of false light claim

11  asserted by public officials).  As a public official, Plaintiff cannot assert a claim for false light.

12      As a former member of the House, former Member of the Arizona Senate, former

13  Chairman of the Senate and House Appropriations Committees, and former Chairman of

14  the Joint Legislative Budget Committee, Plaintiff was, at all relevant times, a public official.

15  [Complaint ¶ 1.]  *See Dennis v. Jordan*, 71 Ariz. 430, 452, 229 P.2d 692, 707 (1951) (referring

16  to members of the legislature as public officials).  Because the statements within, and

17  findings and conclusions of, the Sherman & Howard Report relate to Plaintiff's conduct and

18  performance as a public official, Plaintiff's false light claim fails as a matter of law and must

19  be dismissed.  [*See, e.g.*, HR 2003 (**Ex. 1**); Report, pp. 6, 75 (finding credible evidence that

20  Plaintiff "by his repeated pervasive conduct has created a hostile working environment for

21  his colleagues and those with business before the Legislature") (**Ex. 2**).]

22      **G.    Plaintiff Fails To State A Claim For Wrongful Termination.**

23      Plaintiff's fourth claim for relief asserts in one conclusory statement that Plaintiff

24  "was wrongfully terminated from his position of Representative of legislative district 13,

25  resulting in loss of salary, fringe benefits, position, and most important, reputation."

26  [Complaint ¶ 193.]  Similar to all other claims in the Complaint, Plaintiff does not identify on

27  what basis he alleges a wrongful termination claim, nor allege any facts sufficient to

28  demonstrate a plausible claim for wrongful termination against Mr. Adams (or any other

15

COHEN DOWD QUIGLEY

Defendant).  Indeed, the claim belies logic.  Plaintiff was not an "employee" of Mr. Adams or any other Defendant – he was an elected official serving as a member of the House.  Mr. Adams was not in a position of authority to terminate Plaintiff's position within the House. Finally, Plaintiff was not "terminated."  He was expelled from the House of Representatives by a vote of 56-3, based on findings that he (1) engaged in a "pattern of conduct [that] was dishonorable and unbecoming of a member of the House"; and (2) "undermined the public's confidence in [the House] and violated the order and decorum necessary to complete the peoples' work in the State of Arizona."  [HR 2003 (**Ex. 1**).]  Following these findings, the House exercised the power granted to it by the Arizona Constitution to expel Plaintiff.  [*Id.*] ARIZ. CONST. Art. IV, Pt. 2, § 11.  The House's exercise of its legislative functions and constitutional rights cannot form the basis for a wrongful termination claim and the wrongful termination claim must be dismissed.

### H.    Plaintiff Fails To State Conspiracy And Aiding And Abetting Claims.

Although not pled as independent legal claims, the Complaint appears to assert that the Defendants are liable for conspiring to violate § 1983, conspiring to defame Plaintiff, conspiring to commit false light, or aiding and abetting one another in committing these unlawful or tortious acts.  [*See* Complaint ¶¶ 185 ("Defendants aided and abetted each other and conspired to deprive Mr. Shooter of his constitutional rights."), 189 ("Defendants are liable for . . . aiding and abetting and conspiracy to commit defamation."), 192 ("Defendants are liable for . . . aiding abetting and conspiracy to commit false light invasion of privacy."); *see also id.* ¶ 59 ("All activities of [Mr.] Mesnard, described below, were a result of his agreement with [Mr.] Adams and another member of the Governor's Office.").]

A claim for civil conspiracy requires Plaintiff to plead facts sufficient to demonstrate an agreement between two or more people "to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damage." *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 498, ¶ 99, 38 P.3d 12, 36 (2002); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (explaining that conspiracy under § 1983 requires plaintiff to establish a meeting of the

COHEN DOWD QUIGLEY

minds to violate plaintiff's constitutional rights; affirming dismissal of conspiracy claim as plaintiff "could allege no specific facts to show any agreement between [the defendants]"). Liability for civil conspiracy may exist only when an underlying wrongful act or tort is accomplished; a mere agreement without more is not actionable.  *Wells Fargo*, 201 Ariz. at 499, ¶ 100, 38 P.3d at 37; *Woodrum*, 866 F.2d at 1126 (conspiracy to violate § 1983 cannot exist absent an actual deprivation of civil rights).  As Plaintiff cannot establish or even plead facts sufficient to state plausible claims for violation of § 1983, defamation or false light, any civil conspiracy claim necessarily fails.

Similarly, to state a viable claim for aiding and abetting tortious conduct, Plaintiff must allege sufficient facts to demonstrate:  (1) the occurrence of a tort by a primary tortfeasor; (2) defendant's knowledge that the conduct constitutes a tort; and (3) defendant's substantial assistance or encouragement of the primary tortfeasor.  *Wells Fargo*, 201 Ariz. at 485, ¶ 34, 38 P.3d at 23 (citations omitted); *see also, e.g., Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 491, ¶ 44, 200 P.3d 977, 988 (App. 2008).  Substantial assistance requires that the defendant's conduct "must have been a substantial factor in making it easier for" the commission of the tort.  *Pope*, 219 Ariz. at 491, ¶ 42, 200 P.3d at 988.  Because Plaintiff cannot state a § 1983 claim or a plausible claim for defamation or false light, Plaintiff has not pled (and cannot plead) the first, necessary element.  Accordingly, Plaintiff's aiding and abetting claims, if any, must also be dismissed.

Because each underlying claim is subject to dismissal, the Court must similarly dismiss any related, secondary theories of liability for conspiracy or aiding and abetting.  Finally, as Plaintiff also fails to plead any facts supporting his conclusory allegations of a conspiracy/agreement between the Defendants or any substantially assistance by Mr. Adams, these claims are subject to dismissal under Rule 12(b)(6), *Twombly* and its progeny.

## IV.  CONCLUSION.

Plaintiff's Complaint is fatally flawed and fails to state a single cognizable claim for relief.  For each of the foregoing reasons, Defendants Kirk and Janae Adams respectfully request that this Court dismiss the Complaint in its entirety with prejudice as to them.

RESPECTFULLY SUBMITTED March 18, 2019.

COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
   Attorneys for Kirk and Janae Adams

By:      /s/ Daniel P. Quigley
          Ronald Jay Cohen
          Daniel P. Quigley
          Betsy J. Lamm
          Lauren M. LaPrade

COHEN DOWD QUIGLEY

1

**CERTIFICATE OF CONFERRAL**

2      Pursuant to LRCiv 12.1(c), undersigned counsel for Defendants Kirk and Janae

3  Adams certifies that opposing counsel has been notified in writing of the issues asserted in

4  the contemporaneously filed Motion to Dismiss.  The parties have conferred regarding these

5  issues, but were unable to agree that Plaintiff's Complaint was curable in whole or in part by

6  a permissible amendment (and Plaintiff offered no such proposed amendments).

7

8                                            */s/ Daniel P. Quigley*
                                             Daniel P. Quigley

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN DOWD QUIGLEY

1    **CERTIFICATE OF SERVICE**

2         I hereby certify that on March 18, 2019, I electronically transmitted the attached

3    document to the Clerk's office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to the following CM/ECF registrants in this action:

5

6                    Thomas C. Horne
                    **HORNE SLATON, PLLC**

7                    6720 North Scottsdale Road, Suite 285
                    Scottsdale, Arizona  85253

8                    horne@horneslaton.com

9                     *Attorney for Donald M. Shooter*

10                   Stephen W. Tully
                    Bradley Lynn Dunn

11                   **HINSHAW & CULBERTSON LLP**

12                   2375 East Camelback Road, Suite 750
                    Phoenix, Arizona  85016

13                   STully@hinshawlaw.com

14                    *Attorney for Javan "J.D." and Holly Mesnard*

15

16        I further sent a copy of the attached document using electronic and U.S. mail to

17   counsel for the State of Arizona, who are not yet associated with this action through the

     CM/ECF System, at the following address:
18

19                   Michael Tryon
                    Stephanie Elliott

20                   Jeremy Horn
                    **OFFICE OF THE ARIZONA ATTORNEY GENERAL**

21                   2005 North Central Avenue

22                   Phoenix, Arizona  85004

23                   Michael.Tryon@azag.gov
                    Stephanie.Elliott@azag.gov

24                   Jeremy.Horn@azag.gov

25                    *Attorneys for the State of Arizona*

26                   */s/ Marci Kramer*

27

28

                                          20